**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHEMALLOY COMPANY, LLC,** | : | |
| | : | |
| *Plaintiff,* | : | **CIVIL ACTION** |
| v. | : | **No. 22-1143** |
| | : | |
| **CITIBANK, N.A.,** | : | |
| | : | |
| *Defendant.* | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                                    **June 30, 2022**

## I.      INTRODUCTION

In this suit, Plaintiff Chemalloy Company LLC ("Chemalloy") brings one claim against Defendant Citibank N.A. ("Citibank") for negligence in their administration of a non-party's bank account. ECF No. 1 at 22-29.

Before the Court is Defendant Citibank's Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 11.

## II.      BACKGROUND[1]

Chemalloy alleges that Citibank should be held liable for funds obtained fraudulently by a Citibank customer and subsequently withdrawn from a Citibank customer account. On or about April 17, 2021, Chemalloy alleges that a Citibank customer hacked their email server and

---

[1] The Court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [ ] construe[s] them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC,* 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)).  Except as noted, the Court draws the following facts from the Complaint and the attached exhibits.  *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complaint's claims are based upon these documents.").

1

fraudulently generated an email, purportedly from Chemalloy's CFO, instructing the accounting department to authorize an ACH transfer of funds totaling $55,000 to Metal Powder Technology. *Id*. ¶ 6.[2] Chemalloy's accounting department then authorized the funds to be sent from Chemalloy's account with JP Morgan Chase to the Citibank account. *Id*. ¶ 8.

On or about April 19, 2021, Chemalloy alleges that a second fraudulent email was generated appearing to come from Chemalloy's CFO, instructing the accounting department to deposit $110,000 in a Citibank account purportedly for payment to Metal Powder Technology. *Id*. ¶ 9. Chemalloy explains that, at the time, nothing appeared to be fraudulent about the request for payment, and just as with the first transfer, the second transfer was sent from Chemalloy's JP Morgan Chase account to the Citibank account. *Id*. ¶ 10.

On or about April 27, 2021, Chemalloy alleges that a third fraudulent email was generated appearing to come again from Chemalloy's CFO to the accounting department, authorizing an ACH transfer totaling $280,000 to a Citibank account purportedly for payment to Metal Powder Technology. *Id*. ¶ 11. Chemalloy explains that nothing immediately appeared fraudulent about the third payment request. *Id*. ¶ 12. As with the first two ACH transfers, the third ACH transfer was sent from Chemalloy's JP Morgan Chase account to the Citibank account. *Id*.

The following day, JP Morgan Chase communicated to Chemalloy that the $280,000 transfer request from their account seemed irregular for Chemalloy and recommended that Chemalloy complete a fraud review of the transaction. *Id*. ¶ 13. Chemalloy discovered the emails were fraudulent and the CFO never authored them. *Id*. Chemalloy alleges that they immediately

---

[2] Metal Powder Technology is the name of a vendor with whom Plaintiff regularly conducts business. *Id.* at ¶ 7. Chemalloy alleges that the hacker used an actual vendor's name to fraudulently obtain payments, though the hacker and bank account are not associated with the vendor. CITE. Metal Powder Technology is not a party to this action.

contacted Citibank through JP Morgan Chase to alert them to the fraudulent transactions. *Id*. ¶ 14. Chemalloy further alleges that they requested the transactions be reversed or, at a minimum, the account be frozen. *Id*. Chemalloy also alleges that Citibank agreed to freeze the account. *Id*. ¶ 15. Chemalloy states that law enforcement became involved in the fraud investigation shortly after. *Id*. Chemalloy claims that at the time they brought the fraud to Citibank's attention, Citibank notified JP Morgan Chase that about $250,000 of the $445,000 fraudulent payments deposited into the Citibank account remained in the account. *Id*. ¶ 16. Chemalloy further claims that Citibank also notified JP Morgan Chase that the account was frozen pending a fraud investigation, which could take about 90 days to complete. *Id*.

Chemalloy contends that as of May 17, 2021, law enforcement advised Chemalloy that the ending account balance in the Citibank account totaled $240,076.45. *Id*. ¶ 17. Chemalloy further contends that months thereafter, on August 3, 2021, Citibank advised Chemalloy through JP Morgan Chase that no funds remained in the account. *Id*. ¶ 18. Chemalloy alleges that about $250,000 remained in the Citibank account at the time it was allegedly frozen, and nearly that much remained as of May 17, 2021. *Id.* Chemalloy alleges that Citibank's failure to properly maintain the freeze on the account following the April 28, 2021 request to do so directly caused the final $240,076.45 to be withdrawn from the account. *Id*. ¶ 20. Chemalloy states that they eventually learned that a Cuban citizen opened the fraudulent account. *Id*. ¶ 19. Chemalloy maintains that Citibank is solely responsible for Chemalloy's loss of approximately $250,000. *Id*. ¶ 21.

On February 18, 2022, Chemalloy filed a one-count Complaint against Citibank in the Court of Common Pleas of Montgomery County, Pennsylvania. ECF No. 1. On February 22, 2022, Chemalloy served Citibank with a copy of the Complaint. *Id.* On March 24, 2022, Citibank

filed a notice to remove the case to the United States District Court for the Eastern District of Pennsylvania. *Id*. Chemalloy is a limited liability corporation with its principal place of business in Conshohocken, Pennsylvania and all its members are citizens of Norway. ECF No. 1 ¶¶ 6-7, Exhibit C. *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("the citizenship of an LLC is determined by the citizenship of its members."). The Court has diversity jurisdiction as Plaintiff's members are all citizens of Norway and Defendant Citibank is a citizen of South Dakota. ECF No. 1 ¶¶ 8-9. In its Complaint, Chemalloy demands approximately $250,000 in damages, which is above the $75,000 threshold for diversity jurisdiction.

On April 25, 2022, Citibank filed a Motion to Dismiss for failure to state a claim. *Id*.

## III.    STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (quoting *Santiago v. Warminster Twp*., 629 F.3d 121, 128 (3d Cir. 2010)) (internal quotation marks omitted).  A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court accepts as true the factual allegations contained in the complaint but disregards rote recitals of the elements of a cause of action, legal conclusions, and conclusory statements.  *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012).  The Court will grant a motion to dismiss if the factual allegations do not "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Third Circuit directs the Court to apply a three-step analysis on a 12(b)(6) motion. First, the Court must note the elements the plaintiff must plead to state a claim. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (Citibank *Iqbal*, 556 U.S. at 675). Next, the Court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* Finally, the Court assumes the veracity of well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief. *Id.* In ruling on a motion to dismiss, the Court considers only "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 772 (3d Cir. 2013).

## IV.   DISCUSSION

### 1.   Article 4A of the Uniform Commercial Code

Citibank contends that Article 4A of the Uniform Commercial Code ("UCC"), which governs electronic funds transfers, preempts Chemalloy's arguments that Citibank owed any kind of obligation to the company. ECF No. 11 at 11. Chemalloy disagrees with Citibank's assertion that Chemalloy's claim is "clearly grounded in electronic fund transfers." ECF No. 11 at 11. Chemalloy contends that its claims have "nothing to do with Citibank's handling of the electronic funds transfer into Citibank's client's account. Chemalloy's claims are based upon actions taken by Citibank several weeks after it accepted the fraudulent funds into its client's account, when it allowed a freeze that it imposed to be lifted on an account in which it knew the funds were purportedly the subject of fraud and for which Citibank agreed to undertake a fraud review." ECF No. 12 at 4.

Article 4A of the UCC applies to claims arising out of wire transfers. *United States v. PNC Bank,* 2009 WL 10736701 (E.D. Pa. Mar. 31, 2009); *DeFazio v. Wells Fargo Bank Nat'l Ass'n,* 2020 WL 1888252 (D.N.J. Apr. 16, 2020). Electronic fund transfers begin "with the originator's payment order" and is "completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order." 13 Pa. C.S. § 4A104(a).

Chemalloy's claim of negligence is premised only on the subsequent withdrawal of the funds from the fraudulent account during the requested account freeze. ECF No. 12 at 8. Chemalloy is not claiming that Citibank is liable for the fraudulent wire transfer itself, only that a duty was created and owed once Citibank was informed of the potential fraud and allegedly agreed to prevent the funds from withdrawal after funds had been transferred and received by the bank account owner. This is apparent even in the assertions Citibank makes in its Motion to Dismiss. Citibank alleges that Chemalloy "cannot unilaterally cancel [a wire transfer] after it has been accepted by the receiving bank[,]" though at no point in its Complaint does Chemalloy state that it attempted to cancel the three transfers. ECF No. 11 at 12. Chemalloy requested that the funds be either returned or held frozen until resolution of the fraud investigation to prevent further economic loss. Furthermore, Chemalloy is not attempting to hold Citibank liable for the fraudulent transfers, as evidenced by the damages being claimed, which are only a portion of the total amount sent via wire transfer. Therefore, any claim of negligence premised on the withdrawal of funds due to Citibank's failure to keep the funds frozen occurred after the wire funds transaction was complete and Plaintiff's claims are not preempted by Article 4A of the UCC.

2.  <u>Pennsylvania Banking Code 7 P.S. § 606</u>

Citibank also asserts that, even if Chemalloy's claim is based on "post transfer" conduct,

it is wholly barred by Section 606 of the Pennsylvania Banking Code.[3] Chemalloy contends that,

while the Pennsylvania Banking Code identifies requirements for banks, the statute "does not

preclude a bank from taking actions to protect a third party from a potential fraud in

circumstances other than when a court order is obtained." ECF No. 12 at 11.

This statute states in relevant part:

> "(a) An institution shall not be required, in the absence of a court order or indemnity
> required by this section, to recognize any claim to, or any claim of authority to exercise
> control over, a deposit account […] made by a person or persons other than: (i) the
> customer in whose name the account or property is held by the institution, or (ii) an
> individual or group of individuals who are authorized to draw on or control the account or
> property pursuant to a certified corporate resolution or other written arrangement with the
> customer, currently on file with the institution […] (b) To require an institution to recognize
> an adverse claim to, or adverse claim of authority to control, a deposit account […]
> whoever makes the claim must either: (i) obtain and serve on the institution an appropriate
> order directed to the institution by a court restraining any action with respect to the account
> or property […] or (ii) deliver to the institution a bond, in form and amount and with
> sureties satisfactory to the institution, indemnifying the institution against any liability, loss
> or expense which it might incur because of its recognition of the adverse claim or because
> of its refusal by reason of such claim to honor any check or other order of, or to deliver any
> property to, anyone described in clauses (i) and (ii) of subsection (a)[.]"

7 P.S. § 606 (a)-(b).

The Court agrees with Citibank that Section 606 requires a party to obtain and serve on

the bank a court order instructing the bank to freeze the funds and mandating that the funds be

---

[3] "The Third Circuit has instructed that before a district court applies the applicable choice-of-law analysis it must first determine whether a conflict of law actually exists pursuant to a three-step inquiry." *Riffin v. Conrail Corp.*, 363 F. Supp. 3d 569, 574 n. 4 (E.D. Pa.), *aff'd*, 783 F. App'x 246 (3d Cir. 2019) (citing *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007)). "This inquiry includes, first, a determination whether an actual or real conflict exists between the laws of the jurisdiction at issue." *Id.* Here, neither party has identified another state law applicable to this claim. While Citibank "rejects the application of Pennsylvania law" in a footnote, it uses Pennsylvania law and provides no alternative. Both parties have cited exclusively to Pennsylvania law, thus the Court will apply Pennsylvania law.

treated as within the control of the third party instead of the account holder. ECF No. 11 at 15. Citibank points to *E.F. Houghton & Co. v. Doe*, wherein the Superior Court decided the "nature of the notice that must be given to a bank by a third party under Section 606 of the Banking Code in order for the third party to assert successfully a claim to funds in a depositor's account superior to that of the depositor or the bank itself." 427 Pa. Super. 303, 304, 628 A.2d 1172 (1993). In that case, the bank refused to freeze the funds before receiving a court order and the Superior Court affirmed that the bank was not required to recognize the third party's adverse claim to the funds without the third party satisfying the requirements of Section 606. *See E.F. Houghton*, 427 Pa. Super. at 307, 310 ("The law provides that a bank which recognizes an alleged 'adverse claim' to actual ownership of the account where no order or bond has been served does so at its own risk."). "Section 606 clearly and unambiguously defines the type of notice that is effective to prevent set off or other action by the bank." *Id*. at 310. "Where such an adverse claim is made, the Banking Code requires that the claimant provide something more than mere 'notice' of the claim; a letter purporting to advise the bank of the alleged claim is not sufficient under the statute." *Id*.

Here, Chemalloy, a noncustomer, similarly alleges that Citibank mishandled the funds once it was notified that the funds were fraudulently obtained. Once they became aware of the potential fraud, Chemalloy contacted Citibank through its bank JP Morgan Chase and alerted Citibank of the transactions. This notification, according to Section 606, is insufficient and does not necessitate that Citibank take any action on the adverse claim. Chemalloy asserts that Citibank then had an option to freeze the account and undertake a fraud review anyway, even though it was not required. ECF No. 12 at 11. It is apparent from the fact that Citibank allowed the funds to be withdrawn that it ultimately elected not to exercise that option. More importantly,

Chemalloy misunderstands that the Pennsylvania Banking Code prevents Citibank from being held liable for its inaction. Because Chemalloy did not satisfy the statutory requirements to mandate Citibank's response to its fraud claim, it cannot now hold Citibank liable for allegedly failing to respond. Thus, Citibank was not obligated to take action after being merely notified of potential fraud and cannot be held liable for that inaction.

### 3.  Duty of Care

The Court will now address whether Chemalloy has pled sufficient facts to support a plausible claim of negligence against Citibank based on the premise that Citibank affirmatively created a duty of care by allegedly agreeing to freeze the funds pending a fraud investigation. Under Pennsylvania common law, "[i]t is axiomatic that in order to maintain a negligence action, the plaintiff must show that the defendant had a duty to conform to a certain standard of conduct; that the defendant breached that duty; that such breach caused the injury in question; and actual loss or damage." *Wisniski v. Brown & Brown Ins. Co.*, 906 A.2d 571, 575-76 (Pa. Super. Ct. 2006) (quoting *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008 (2003)). "The question of whether a duty exists is a question of law for the court to decide." *Fragale v. Wells Fargo Bank, N.A.*, 480 F.Supp.3d 653, 661 (E.D. Pa. Aug. 19, 2020).

Chemalloy is not a customer of Citibank, yet Chemalloy alleges that Citibank owed a duty of care when notified of potential fraud and allowing the withdrawal of the transferred funds because Citibank agreed to freeze the funds and undertake a fraud review. Chemalloy contends that under the Restatement of Torts Section 302(b), Citibank owed a common law duty to Chemalloy. ECF No. 12 at 14. Otherwise, Citibank owed a duty to Chemalloy under the *Althaus* factors. ECF No. 12 at 14. "[I]f a common law duty exists under the Restatement

(Second) of Torts, the *Althaus* analysis is not necessary." *Scampone v. Grane Healthcare Co.*, 169 A.3d 600, 617 (Pa. Super. Ct. 2017).

  Chemalloy fails to plead that a bank owes any common law duties to noncustomers under the Restatement of Torts. There is a substantial lack of precedent acknowledging a bank's obligation or duty to noncustomers. Quite the opposite, precedent supports the principle that banks do not owe any duty of care to noncustomers and/or third parties. See e.g., *Adkins v. Sogliuzzo*, 625 F. App'x 565, 569 (3d Cir. 2015) ("Absent a special relationship, courts will typically bar claims of non-customers against banks.") (internal citation omitted); *Fragale*, 480 F.Supp.3d at 661 ("[D]ecisions across the country, including within Pennsylvania, have held that banks do not owe any duty of care to noncustomers and/or third parties."); *Eisenberg v. Wachovia Bank N.A.*, 301 F.3d 220, 225 (4th Cir. 2002) ("Courts in numerous jurisdictions have held that a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship.") (collecting cases); *Commerce Bank v. First Union Nat'l Bank*, 911 A.2d 133, 139 (Pa. Super. Ct. 2006) (holding a bank does not have a duty to take action against a client's bank account when the bank suspects fraud, in order to protect a third-party bank from future similar fraudulent conduct).

  Furthermore, Citibank did not have a duty of care towards Chemalloy under the *Althaus* test. In *Althaus*, the Pennsylvania Supreme Court "established a five-factor policy test for courts to apply when considering whether a particular set of facts warrants imposing a duty where such a duty was not previously recognized." *Fragale*, 480 F.Supp.3d at 664. These factors are: "(1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a

duty upon the actor; and (5) the overall public interest in the proposed solution." *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1169 (2000).

First, as has been outlined above, Citibank did not have a relationship with Chemalloy. "[M]ere knowledge of a dangerous situation, even by one who has the ability to intervene, is not sufficient to create a duty to act." *Fragale*, 480 F.Supp.3d at 665 (internal citation omitted); *Feld v. Merriam*, 485 A.2d 742, 746 (1984) ("[T]here is a general rule against holding a person liable for the criminal conduct of another absent a preexisting duty.") The promise to intervene, later withdrawn, does not create a relationship where one did not exist prior. "The fact that the actor realizes that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action[.]" *Walters v. UPMC Presbyterian Shadyside,*, 187 A.3d 214, 233 (2018) (quoting Restatement (Second) of Torts § 314 when assessing the first *Althaus* factor). Chemalloy fails to plead that Citibank otherwise had some special relationship to it that would create a duty. *See Fink v. Corp. Liaison, LLC*, 2013 WL 1742474, at *4 (E.D. Pa. Apr. 23, 2013) (finding no special relationship where plaintiffs loaned funds to bank customer who used fraudulent bank letter of credit to obtain funds, even though the transaction occurred on bank's financial metaphorical platform, and rejecting claim that bank acquired a duty when it learned of the fraud committed by others). Even drawing all reasonable inferences in favor of Chemalloy, none of the facts alleged show that Citibank had any kind of relationship with Chemalloy from which any such recognized or recognizable duty would arise. *Id*. The lack of relationship between Citibank and Chemalloy is a "significant factor that weighs against the existence of a duty." *Citizens Bank of Pennsylvania v. Reimbursement Technologies, Inc.*, 609 F. App'x 88, 92 (3d Cir. 2015).

Second, the social utility of imposing a duty here would be mixed. There is social utility in requiring banks to take action to address fraud by its own customers, and it could deter fraud if the funds are likely to be frozen once suspicion is raised. However, imposing such a duty would also likely deter banks from taking any action at all. If an offer to undertake a fraud review becomes a binding obligation, banks are far less likely to make such an offer. Creating this duty would open banks to liability both from the customer, who may or may not have obtained the funds fraudulently and is entitled to those funds absent a court order, and also a noncustomer who requested a freeze and fraud review. Thus, this factor is neutral, leaning against establishing a duty.

That ties into the fourth factor, evaluating the consequences of imposing a duty on the actor. In addition to the broad liability this would impose on banks to noncustomers and the incentive it could create for banks to take no action in the face of potential fraud, it will negatively impact the contractual relationship a bank has with its customers, which is paramount to the proper functioning of the institution and the services it offers. If any third party can make an adverse claim and then hold the bank liable for not supporting its claim enough, it affects the bank's ability to maintain its contractual obligations to its customers. Establishing this obligation "would inevitably force banks to ... restrict the[ir] clients' accounts on the least degree of suspicion, thereby alienating their customers, in order to avoid unspecified liability." *Fragale*, 480 F.Supp.3d at 667 (internal citation omitted). It also opens the door to litigation in every case of a fraudulent transfer in which plaintiff alleges that the bank made a verbal promise to freeze the funds, thereby opening the door to discovery and juries being called upon to determine this material fact. This would have a significant impact on the banking industry, one in which the

Pennsylvania legislature addressed by making it clear of the limited, yet well-defined ways, to freeze an account suspected of fraud.

Additionally, Chemalloy was in the best position to prevent the harm allegedly suffered by simply confirming the invoice was accurate, verifying the email received was in fact from the CFO, verifying that the account was the same account used for prior payments to this vendor, or by obtaining a court order mandating that Citibank freeze the funds. Chemalloy made no effort to confirm that the account receiving three separate wire transfers in fact belonged to their vendor. Thus, this factor weighs against creating a duty to noncustomers.

The third factor weighs slightly in favor of a duty. The bank was notified of potential fraud and it was foreseeable at that point that fraudulently obtained funds would be withdrawn from the bank account. It is unlikely for Chemalloy to recover the funds once withdrawn from the account. However, the nature of the risk is economic loss, which "does not compare to other non-monetary risks such as loss of human life or physical harm," and there is no allegation that this fraud scheme was particularly extensive. *Fragale*, 480 F.Supp.3d at 666. Chemalloy was targeted over a short period of time for three transfers and the risk was limited solely to the funds in the Citibank account at the time fraud was alleged by Chemalloy.

Finally, as to the public interest in a proposed solution, the public has an interest in preventing fraudulently obtained funds from being withdrawn once suspicious behavior has been identified. The public likewise has an interest in being able to access funds from their own bank account. That is why the Pennsylvania Banking Code requires a court order to freeze funds. If the noncustomer follows that established protocol it protects both the noncustomer's interest in the funds and the bank's obligation to its customers. Since there is already recourse for entities

like Chemalloy to freeze funds and undertake a fraud review, it does not further serve the public interest to create new duties between a bank and noncustomer.

Therefore, without a duty of care to Chemalloy, Citibank cannot be held liable under a negligence theory.

**V.     CONCLUSION**

For the foregoing reasons, this Court grants Citibank's Motion to Dismiss and the case is dismissed with prejudice.

**BY THE COURT:**

/s/ Chad F. Kenney
**CHAD F. KENNEY, JUDGE**